**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

**In the Matter of:**
**315 NORTH ACADEMY, LLC**
**Debtor**

**Chapter 11**
**Case No.: 18-03138-5-DMW**

**MOTION TO SELL REAL PROPERTY FREE AND CLEAR OF LIENS AND OTHER INTERESTS WITH LIENS TO ATTACH TO PROCEEDS PURSUANT TO 11 U.S.C. § 363(f)**

NOW COMES 315 North Academy, LLC ("Debtor"), by and through undersigned counsel, and moves the Court for an Order allowing and facilitating the sale of real property with liens, if any, to attach to proceeds pursuant to 11 U.S.C. § 363(f). In support of this motion, the Debtor shows unto the Court the following:

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. On June 22, 2018 (the "Petition Date"), the Debtor filed a Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code.

3. The Debtor is a limited liability company organized under the laws of North Carolina that owns real property in Wake County, North Carolina.

4. The Debtor is the owner of the property commonly known as 315 North Academy Street, Cary, NC 27513 ("Property"). Prior to the Petition Date, the Debtor was engaged in the business of leasing office space in the Property.

5. Farmers & Merchants Bank ("F&M Bank") has a first position lien on the Property along with any ad valorem property taxes. There is also a lis pendens filed on the property by Martin S. Cooper.

6. On or about February 5, 2018 after arms-length negotiations, the Debtor signed an Offer to Purchase and Contract (the "Offer") from RCD, LLC ("RCD") to purchase the Property for the sum of $1,925,000.00. The Offer was amended on or about April 6, 2018, lowering the purchase price to $1,875,000.00 ("Amendment"). The Debtor executed the Offer and the Amendment. The Offer and the Amendment are collectively referred to herein as the "Contract." A copy of the Contract is attached hereto as Exhibit A.

7. The Contract was executed with the consent of two members of the Debtor, R. Alex Cooper, Sr. and Daniel Cooper. Together, they own 55.5% of the Debtor. The operating agreement of the Debtor requires a majority to approve the sale of the Debtor's real property, and a majority has approved the sale.

8. A member of the Debtor, Martin S. Cooper, has attempted to impede the sale of the property. To that end, Martin S. Cooper filed a lawsuit in Wake County Superior Court, Case No.18-CVS-5486. Martin S. Cooper obtained a temporary restraining order ex parte on May 4, 2018. The temporary restraining order was dissolved by the Honorable Judge Gregory P. McGuire on or about May 22, 2018. After he lost that hearing, Martin S. Cooper wrongfully filed a lis pendens in another attempt to impede the sale.

9. The Debtor wishes to honor its obligations under the Contract and sell the property to RCD, LLC.

10. This Motion is made pursuant to the provisions of sections 363(f), 105, *et seq*. of the Bankruptcy Code and subject to Rule 6004 of the Federal Rules of Bankruptcy Procedure, which provide for a subsequent determination of the validity, priority, and extent of such liens after due notice and a hearing as provided by law.

11. Pursuant to Section 363(f) of the Bankruptcy Code, the Debtor may sell the Property free and clear of all liens, lis pendens, encumbrances, rights, interests, and claims of record.

12. The Debtor requests that any sales of the Real Property be made free and clear of any and all liens, lis pendens, encumbrances, claims, rights and other interests, including but not limited to the following:

a. The deed of trust in favor of F&M Bank;

b. The lis pendens filed by Martin S. Cooper;

c. Any and all ad valorem property taxes due and owing to any city, county, or municipal corporation; and

d. Any and all remaining interests, liens encumbrances, rights and claims asserted against the Real Property, which relate to or arise as a result of a sale of the Real Property, or which may be asserted against any buyer of the Real Property, including, but not limited to, those liens, encumbrances, interests, rights and claims, whether fixed and liquidated or contingent and unliquidated, that have or may be asserted against the Property or any buyer of the Property by anyone, including without limitation the North Carolina Department of Revenue, the Internal Revenue Service, the Employment Security Commission, and any and all other taxing and government authorities.

13. The proceeds of sale of any unencumbered or under-encumbered property shall be subject to payment of all reasonable administrative costs of this proceeding as provided for by 11 U.S.C. §§ 330, 503, 507, and other applicable sections of the Bankruptcy Code, as the Court may allow.

14. This Court, after notice and a hearing, may authorize a surcharge of the collateral proceeds from the sale of the Real Property for the payment of the reasonable, necessary costs and expenses of preserving, or disposing of, the Real Property, but only to the limited extent that such costs and expenses directly benefit the holders of allowed secured claims against the Real Property, as provided for by 11 U.S.C. § 506(c), or the Debtor, including the quarterly fee incurred as a result of any sale. All other expenses associated with the sale of the Real Property and the administration of this case, except those that have been afforded priority or superpriority status by previous orders of this court, shall be paid as provided by 11 U.S.C. 503(b), in accordance with the priorities set forth in 11 U.S.C. § 507(a)(2). With the exception of any quarterly fees owed pursuant to 28 U.S.C. § 1930, all such costs and expenses shall be approved by the Court prior to payment.

15. Any proposed sale will be subject to approval by the Court after notice to creditor(s).

16. If any creditor claiming a lien, lis pendens, encumbrance, right or interest on, in or against the Property, or against a buyer of the Real Property, does not object within the time allowed, it should be deemed to have consented to sale of the Real Property free and clear of its liens, lis pendens, claims, encumbrances, rights, and interests.

WHEREFORE, the Debtor prays of the Court the following:

1. That the Court enter an Order allowing sale of the Real Property free and clear of any liens, lis pendens, claims, encumbrances, rights, and interests;

2. That the encumbrances described herein, if enforceable, shall attach to the proceeds of any sale, subject to orders of distribution that may be entered by this Court;

3. That the proceeds of sale of any unencumbered or under-encumbered property shall be subject to payment of all administrative costs of this proceeding;

4. That the proceeds of sale of any over-encumbered property shall be subject to the payment of the reasonable, necessary costs and expenses of preserving, or disposing of, such property, to the extent of any benefit to the holder of an allowed secured claim as provided for by 11 U.S.C. § 506(c), such costs and expenses, including the fees and expenses of the Debtor's bankruptcy counsel, and the quarterly fee incurred as a result of any sale, to be approved by this Court;

5. That the Court reserve for a subsequent determination the validity, priority, and extent of the liens of such lienholders and claimants;

6. That the Court enters an Order stating that the buyers of the Real Property shall not assume, have any liability for, or in any manner be responsible for any liabilities or obligations of the Debtor, whether *in rem* claims or *in personam* claims;

7. That the Court permanently enjoin all creditors and claimants of the Debtor and all persons having an interest of any nature derived through the Debtor, from pursuing any action against the buyers of the Real Property or the Real Property once acquired by the buyers;

8. That the 14-day stay applicable to Orders authorizing the sale of property pursuant to Rule 6004(h) of the Federal Rules of Bankruptcy Procedure be waived; and

9. For any such other and further relief as the Court deems just and proper.

This the 22nd day of June, 2018.

s/George Mason Oliver
GEORGE MASON OLIVER
N.C. State Bar No. 26587
THE LAW OFFICES OF
OLIVER & CHEEK, PLLC
Post Office Box 1548
New Bern, NC 28563
Telephone: (252) 633-1930
Facsimile: (252) 633-1950
Email: george@olivercheek.com
*Attorney for the Debtor*



REALTORS®
Commercial Alliance
REALTOR® North Carolina Association of REALTORS®

# AGREEMENT FOR PURCHASE AND SALE OF REAL PROPERTY

**THIS AGREEMENT**, including any and all addenda attached hereto ("Agreement"), is by and between RCD, LLC or assigns, a(n) Limited Liability Company ("Buyer"), and
(individual *or* State of formation and type of entity)
315 North Academy LLC, a(n) Limited Liability Company ("Seller").
(individual *or* State of formation and type of entity)

FOR AND IN CONSIDERATION OF THE MUTUAL PROMISES SET FORTH HEREIN AND OTHER GOOD AND VALUABLE CONSIDERATION, THE RECEIPT AND SUFFICIENCY OF WHICH ARE HEREBY ACKNOWLEDGED, THE PARTIES HERETO AGREE AS FOLLOWS:

**Section 1. Terms and Definitions:** The terms listed below shall have the respective meaning given them as set forth adjacent to each term.

(a) **"Property":** (Address) 315 N Academy St Cary, NC 27513

Plat Reference: Lot(s) ________, Block or Section ________, as shown on Plat Book or Slide ________ at Page(s) ________, ________ County, consisting of ________ acres.

☐ If this box is checked, "Property" shall mean that property described on **Exhibit A** attached hereto and incorporated herewith by reference,

(For information purposes: (i) the tax parcel number of the Property is: 0764427307; and, (ii) some or all of the Property, consisting of approximately 1.18 acres, is described in Deed Book 16210, Page No. 0072, Wake County.)

together with all buildings and improvements thereon and all fixtures and appurtenances thereto and all personal property, if any, itemized on **Exhibit A.**

$ $1,925,000.00 (b) **"Purchase Price"** shall mean the sum of One Million, Nine Hundred Twenty-Five Thousand Dollars, ***payable on the following terms:***

$ 10,000.00 (i) **"Earnest Money"** shall mean Ten Thousand Dollars or terms as follows: ________

Upon this Agreement becoming a contract in accordance with Section 14, the Earnest Money shall be promptly deposited in escrow with NAI Carolantic Trust Account (name of person/entity with whom deposited- "Escrow Agent"), to be applied as part payment of the Purchase Price of the Property at Closing, or disbursed as agreed upon under the provisions of Section 10 herein.

This form jointly approved by:
North Carolina Bar Association
North Carolina Association of REALTORS®, Inc.

STANDARD FORM 580-T
Revised 7/2017
© 7/2017

Buyer Initials ________ ________ Seller Initials ________ ________

NAI Carolantic Realty, Inc 5121 Kingdom Way Suite 200 Raleigh, NC 27607 Phone: (919)832-0594 Fax: (919)832-7385 315 N Academy
Moss Withers
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

DocuSign Envelope ID: ...-BAC6-4014-8E16-302CCEF8D9D2

☒ ANY EARNEST MONEY DEPOSITED BY BUYER IN A TRUST ACCOUNT MAY BE PLACED IN AN INTEREST BEARING TRUST ACCOUNT, AND: *(check only ONE box)*

☐ ANY INTEREST EARNED THEREON SHALL BE APPLIED AS PART PAYMENT OF THE PURCHASE PRICE OF THE PROPERTY AT CLOSING, OR DISBURSED AS AGREED UPON UNDER THE PROVISIONS OF SECTION 10 HEREIN. (Buyer's Taxpayer Identification Number is: ______________________ )

☐ ANY INTEREST EARNED THEREON SHALL BELONG TO THE ACCOUNT HOLDER IN CONSIDERATION OF THE EXPENSES INCURRED BY MAINTAINING SUCH ACCOUNT AND RECORDS ASSOCIATED THEREWITH.

$______________ (ii) **Proceeds of a new loan** in the amount of ______________________________ Dollars for a term of ______ years, with an amortization period not to exceed ________ years, at an interest rate not to exceed _________ % per annum with mortgage loan discount points not to exceed ________ % of the loan amount, or such other terms as may be set forth on **Exhibit B**. Buyer shall pay all costs associated with any such loan.

$______________ (iii) **Delivery of a promissory note** secured by a deed of trust, said promissory note in the amount of ______________________________ Dollars being payable over a term of ________ years, with an amortization period of ________ years, payable in monthly installments of principal, together with accrued interest on the outstanding principal balance at the rate of ______________________ percent (_________ %) per annum in the amount of $__________________, with the first principal payment beginning on the first day of the month next succeeding the date of Closing, or such other terms as may be set forth on **Exhibit B**. At any time, the promissory note may be prepaid in whole or in part without penalty and without further interest on the amounts prepaid from the date of such prepayment. **(NOTE: In the event of Buyer's subsequent default upon a promissory note and deed of trust given hereunder, Seller's remedies may be limited to foreclosure of the Property. If the deed of trust given hereunder is subordinated to senior financing, the material terms of such financing must be set forth on Exhibit B. If such senior financing is subsequently foreclosed, the Seller may have no remedy to recover under the note.)**

$______________ (iv) **Assumption** of that unpaid obligation of Seller secured by a deed of trust on the Property, such obligation having an outstanding principal balance of $ ____________________ and evidenced by a note bearing interest at the rate of ______________________ percent ( _________ %) per annum, and a current payment amount of $ ________________.

$ 1,915,000.00 (v) **Cash, balance of Purchase Price,** at Closing in the amount of One Million, Nine Hundred Fifteen Thousand Dollars.

(c) "**Closing**" shall mean the date of completion of the process detailed in Section 11 of this Agreement. Closing shall occur on or before ______________________ or Thirty (30) Days from expiration of Examination Period. Buyer has the right to extend as presented in Exihibit B.

(d) "**Contract Date**" means the date this Agreement has been fully executed by both Buyer and Seller.

(e) "**Examination Period**" shall mean the period beginning on the first day after the Contract Date and extending through 5:00pm (based upon time at the locale of the Property) on Sixty(60)days from Contract Execution Date.

***TIME IS OF THE ESSENCE AS TO THE EXAMINATION PERIOD.***

Buyer Initials DS RS ________ Seller Initials DAC ________

Page 2 of 8

**STANDARD FORM 580-T**
**Revised 7/2017**
**© 7/2017**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

315 N Academy

(f) **"Broker(s)"** shall mean:
Ladd Commercial ("Listing Agency"),
Richard Ladd ("Listing Agent" - License # ______ )
Acting as: [X] Seller's Agent; [ ] Dual Agent
and NAI Carolantic Realty Inc ("Selling Agency"),
Andrew Moss Withers ("Selling Agent"- License # 262680 )
Acting as: [X] Buyer's Agent; [ ] Seller's (Sub) Agent; [ ] Dual Agent

(g) **"Seller's Notice Address"** shall be as follows:
1608 Sunrise Road
Cary, NC 27513
e-mail address: ______ fax number: ______
except as same may be changed pursuant to Section 12.

(h) **"Buyer's Notice Address"** shall be as follows:
1100 Crescent Green
Suite 220

e-mail address: Cary, Nc 27518 fax number: ______
except as same may be changed pursuant to Section 12.

[X] (i) If this block is marked, additional terms of this Agreement are set forth on **Exhibit B** attached hereto and incorporated herein by reference. **(Note: Under North Carolina law, real estate agents are not permitted to draft conditions or contingencies to this Agreement.)**

[ ] (j) If this block is marked, additional terms of this Agreement are set forth on the Additional Provisions Addendum (Form 581-T) attached hereto and incorporated herein by reference.

**Section 2. Sale of Property and Payment of Purchase Price:** Seller agrees to sell and Buyer agrees to buy the Property for the Purchase Price.

**Section 3. Proration of Expenses and Payment of Costs:** Seller and Buyer agree that all property taxes (on a calendar year basis), leases, rents, mortgage payments and utilities or any other assumed liabilities as detailed on attached **Exhibit B**, if any, shall be prorated as of the date of Closing. Seller shall pay for preparation of a deed and all other documents necessary to perform Seller's obligations under this Agreement, excise tax (revenue stamps), any deferred or rollback taxes, and other conveyance fees or taxes required by law, and the following:

Buyer shall pay recording costs, costs of any title search, title insurance, survey, the cost of any inspections or investigations undertaken by Buyer under this Agreement and the following:

Each party shall pay its own attorney's fees.

**Section 4. Deliveries:** Seller agrees to use best efforts to deliver to Buyer as soon as reasonably possible after the Contract Date copies of all material information relevant to the Property in the possession of Seller, including but not limited to: title insurance policies (and copies of any documents referenced therein), surveys, soil test reports, environmental surveys or reports, site plans, civil drawings, building plans, maintenance records and copies of all presently effective warranties or service contracts related to the Property. Seller authorizes (1) any attorney presently or previously representing Seller to release and disclose any title insurance policy in such attorney's file to Buyer and both Buyer's and Seller's agents and attorneys; and (2) the Property's title insurer or its agent to release and disclose all materials in the Property's title insurer's (or title insurer's agent's) file to Buyer and both Buyer's and Seller's agents and attorneys. If Buyer does not consummate the Closing for any reason other than Seller default, then Buyer shall return to Seller all materials delivered by Seller to Buyer pursuant to this Section 4 (or Section 7, if applicable), if any, and shall, upon Seller's request, provide to Seller copies of (subject to the ownership and copyright interests of the preparer thereof) any and all studies, reports, surveys and other information relating directly to the Property prepared by or at the request of Buyer, its employees and agents, and shall deliver to Seller, upon the release of the Earnest Money, copies of all of the foregoing without any warranty or representation by Buyer as to the contents, accuracy or correctness thereof.

**Section 5. Evidence of Title:** Seller agrees to convey fee simple insurable title to the Property without exception for mechanics' liens, free and clear of all liens, encumbrances and defects of title other than: (a) zoning ordinances affecting the Property, (b) Leases (as defined in Section 7, if applicable) and (c) specific instruments on the public record at the Contract Date agreed to by Buyer (not objected to by Buyer prior to the end of the Examination Period), which specific instruments shall be enumerated in the deed referenced in Section 11 (items 5(a), 5(b) and 5(c) being collectively "Permitted Exceptions"); provided that Seller shall be required to satisfy, at or prior to Closing, any encumbrances that may be satisfied by the payment of a fixed sum of money, such as deeds of trust, mortgages or statutory liens. Seller shall not enter into or record any instrument that affects the Property (or any personal property listed on **Exhibit A)** after the Contract Date without the prior written consent of Buyer, which consent shall not be unreasonably withheld, conditioned or delayed.

**Section 6. Conditions:** This Agreement and the rights and obligations of the parties under this Agreement are hereby made expressly conditioned upon fulfillment (or waiver by Buyer, whether explicit or implied) of the following conditions:

(a) **New Loan**: The Buyer must be able to obtain the loan, if any, referenced in Section 1(b)(ii). Notwithstanding, after ______________________________, Seller may request in writing from Buyer a copy of the commitment letter. If Buyer fails to provide Seller a copy of the commitment letter within five (5) days of receipt of Seller's request, then Seller may terminate this Agreement by written notice to Buyer at any time thereafter, provided Seller has not then received a copy of the commitment letter, and Buyer shall receive a return of Earnest Money.

(b) **Qualification for Assumption**: The obligations of Buyer under this Agreement are conditioned upon Buyer being able to assume the existing loan described above. If such assumption requires the lender's approval, Buyer agrees to use its best efforts to secure such approval and to advise Seller immediately upon receipt of the lender's decision. Approval must be granted on or before ______________________________. On or before this date, Buyer has the right to terminate this Agreement for failure to be able to assume the loan described above by delivering to Seller written notice of termination by the above date, *time being of the essence.* If Buyer delivers such notice, this Agreement shall be null and void and Earnest Money shall be refunded to Buyer. If Buyer fails to deliver such notice, then Buyer will be deemed to have waived this condition. Unless provided otherwise in Section 3 hereof, Buyer shall pay all fees and costs associated with any such assumption, including any assumption fee charged by the lender. At or before Closing, Seller shall assign to Buyer all interest of Seller in any current reserves or escrows held by the lender, any property management company and/or Seller, including but not limited to any tenant improvement reserves, leasing commission reserves, security deposits and operating or capital reserves for which Seller shall be credited said amounts at Closing.

(c) **Title Examination:** After the Contract Date, Buyer shall, at Buyer's expense, cause a title examination to be made of the Property before the end of the Examination Period. In the event that such title examination shall show that Seller's title is not fee simple insurable, subject only to Permitted Exceptions, then Buyer shall promptly notify Seller in writing of all such title defects and exceptions, in no case later than the end of the Examination Period, and Seller shall have thirty (30) days to cure said noticed defects. If Seller does not cure the defects or objections within thirty (30) days of notice thereof, then Buyer may terminate this Agreement and receive a return of Earnest Money (notwithstanding that the Examination Period may have expired). If Buyer is to purchase title insurance, the insuring company must be licensed to do business in the state in which the Property is located. Title to the Property must be insurable at regular rates, subject only to standard exceptions and Permitted Exceptions.

(d) **Same Condition:** If the Property is not in substantially the same condition at Closing as of the date of the offer, reasonable wear and tear excepted, then the Buyer may (i) terminate this Agreement and receive a return of the Earnest Money or (ii) proceed to Closing whereupon Buyer shall be entitled to receive, in addition to the Property, any of the Seller's insurance proceeds payable on account of the damage or destruction applicable to the Property.

(e) **Inspections**: Buyer, its agents or representatives, at Buyer's expense and at reasonable times during normal business hours, shall have the right to enter upon the Property for the purpose of inspecting, examining, conducting timber cruises, and surveying the Property; provided, however, that Buyer shall not conduct any invasive testing of any nature without the prior express written approval of Seller as to each specific invasive test intended to be conducted by Buyer. Buyer shall conduct all such on-site inspections, examinations, testing, timber cruises and surveying of the Property in a good and workmanlike manner, at Buyer's expense, shall repair any damage to the Property caused by Buyer's entry and on-site inspections and shall conduct same in a manner that does not unreasonably interfere with Seller's or any tenant's use and enjoyment of the Property. In that respect, Buyer shall make reasonable efforts to undertake on-site inspections outside of the hours Seller's or any tenant's business is open to the public. Buyer shall provide Seller or any tenant (as applicable) reasonable advance notice of and Buyer shall cause its agents or representatives and third party service providers (e.g. inspectors, surveyors, etc.) to give reasonable advance notice of any entry onto the Property. Buyer shall be obligated to observe and comply with any terms of any tenant lease which conditions access to such tenant's space at the

Property. Upon Seller's request, Buyer shall provide to Seller evidence of general liability insurance. Buyer shall also have a right to review and inspect all contracts or other agreements affecting or related directly to the Property and shall be entitled to review such books and records of Seller that relate directly to the operation and maintenance of the Property, provided, however, that Buyer shall not disclose any information regarding this Property (or any tenant therein) unless required by law and the same shall be regarded as confidential, to any person, except to its attorneys, accountants, lenders and other professional advisors, in which case Buyer shall obtain their agreement to maintain such confidentiality. Buyer assumes all responsibility for the acts of itself, its agents or representatives in exercising its rights under this Section 6(e) and agrees to indemnify and hold Seller harmless from any damages resulting therefrom. This indemnification obligation of Buyer shall survive the Closing or earlier termination of this Agreement. Except as provided in Section 6(c) above, Buyer shall have from the Contract Date through the end of the Examination Period to perform the above inspections, examinations and testing. **IF BUYER CHOOSES NOT TO PURCHASE THE PROPERTY, FOR ANY REASON OR NO REASON, AND PROVIDES WRITTEN NOTICE TO SELLER THEREOF PRIOR TO THE EXPIRATION OF THE EXAMINATION PERIOD, THEN THIS AGREEMENT SHALL TERMINATE, AND BUYER SHALL RECEIVE A RETURN OF THE EARNEST MONEY.**

**Section 7. Leases (Check one of the following, as applicable):**

☐ If this box is checked, Seller affirmatively represents and warrants that there are no Leases (as hereinafter defined) affecting the Property.

☒ If this box is checked, Seller discloses that there are one or more leases affecting the Property ("Leases") and the following provisions are hereby made a part of this Agreement.

(a) A list of all Leases shall be set forth on **Exhibit B**. Seller represents and warrants that as of the Contract Date, there are no other Leases, oral or written, recorded or not, nor any subleases affecting the Property, except as set forth on **Exhibit B**;

(b) Seller shall deliver copies of any Leases to Buyer pursuant to Section 4 as if the Leases were listed therein;

(c) Seller represents and warrants that as of the Contract Date there are no current defaults (or any existing situation which, with the passage of time, or the giving of notice, or both, or at the election of either landlord or tenant could constitute a default) either by Seller, as landlord, or by any tenant under any Lease ("Lease Default"). In the event there is any Lease Default as of the Contract Date, Seller agrees to provide Buyer with a detailed description of the situation in accordance with Section 4. Seller agrees not to commit a Lease Default as Landlord after the Contract Date, and agrees further to notify Buyer immediately in the event a Lease Default arises or is claimed, asserted or threatened to be asserted by either Seller or a tenant under the Lease.

(d) In addition to the conditions provided in Section 6 of this Agreement, this Agreement and the rights and obligations of the parties under this Agreement are hereby made expressly conditioned upon the assignment of Seller's interest in any Lease to Buyer in form and content acceptable to Buyer (with tenant's written consent and acknowledgement, if required under the Lease). Seller agrees to deliver an assignment of any Lease at or before Closing, with any security deposits held by Seller under any Leases to be transferred or credited to Buyer at or before Closing. The assignment shall provide: (i) that Seller shall defend, indemnify and hold Buyer harmless from claims, losses, damages and liabilities (including, without limitation, court costs and attorneys' fees) asserted against or incurred by Buyer which are caused by or the result of any default by Seller under any Lease prior to the date of Closing, and (ii) that Buyer shall defend, indemnify and hold Seller harmless from claims, losses, damages and liabilities (including, without limitation, court costs and attorneys' fees) asserted against or incurred by Seller which are caused by or the result of any default by Buyer under any Lease after the date of Closing.

(e) Seller also agrees to execute and deliver (and work diligently to obtain any tenant signatures necessary for same) any estoppel certificates and subordination, nondisturbance and attornment agreements in such form as Buyer may reasonably request.

**Section 8. Environmental:** Seller represents and warrants that it has no actual knowledge of the presence or disposal, except as in accordance with applicable law, within the buildings or on the Property of hazardous or toxic waste or substances, which are defined as those substances, materials, and wastes, including, but not limited to, those substances, materials and wastes listed in the United States Department of Transportation Hazardous Materials Table (49 CFR Part 172.101) or by the Environmental Protection Agency as hazardous substances (40 CFR Part 302.4) and amendments thereto, or such substances, materials and wastes, which are or become regulated under any applicable local, state or federal law, including, without limitation, any material, waste or substance which is (i) petroleum, (ii) asbestos, (iii) polychlorinated biphenyls, (iv) designated as a Hazardous Substance pursuant to Section 311 of the Clean Water Act of 1977 (33 U.S.C. §1321) or listed pursuant to Section 307 of the Clean Water Act of 1977 (33 U.S.C. §1317), (v) defined as a hazardous waste pursuant to Section 1004 of the Resource Conservation and Recovery Act of 1976 (42 U.S.C. §6903) or (vi) defined as a hazardous substance pursuant to Section 101 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S.C. §9601). Seller has no actual knowledge of any contamination of the Property from such substances as may have been disposed of or stored on neighboring tracts.

Buyer Initials RS ______ ______ Seller Initials ______ ______

**© 7/2017**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com
315 N Academy

**Section 9. Risk of Loss/Damage/Repair:** Until Closing, the risk of loss or damage to the Property, except as otherwise provided herein, shall be borne by Seller. Except as to maintaining the Property in its same condition, Seller shall have no responsibility for the repair of the Property, including any improvements, unless the parties hereto agree in writing.

**Section 10. Earnest Money Disbursement:** In the event that any condition hereto is not satisfied, then the Earnest Money shall be refunded to Buyer. In the event of breach of this Agreement by Seller, the Earnest Money shall be refunded to Buyer upon Buyer's request, but such return shall not affect any other remedies available to Buyer for such breach. In the event of breach of this Agreement by Buyer, the Earnest Money Deposit shall be paid to Seller as liquidated damages and as Seller's sole and exclusive remedy for such breach, but without limiting Seller's rights under Section 6(e) or Section 22 of this Agreement. It is acknowledged by the parties that payment of the Earnest Money to Seller in the event of a breach of this Agreement by Buyer is compensatory and not punitive, such amount being a reasonable estimation of the actual loss that Seller would incur as a result of such breach. The payment of the Earnest Money to Seller shall not constitute a penalty or forfeiture but actual compensation for Seller's anticipated loss, both parties acknowledging the difficulty determining Seller's actual damages for such breach.
NOTE: In the event of a dispute between Seller and Buyer over the disposition of the Earnest Money held in escrow, a licensed real estate broker is required by state law (and Escrow Agent, if not a broker, hereby agrees) to retain the Earnest Money in the Escrow Agent's trust or escrow account until Escrow Agent has obtained a written release from the parties consenting to its disposition or until disbursement is ordered by a court of competent jurisdiction. Alternatively, if a broker or an attorney licensed to practice law in North Carolina is holding the Earnest Money, the broker or attorney may deposit the disputed monies with the appropriate clerk of court in accordance with the provisions of N.C.G.S. §93A- 12.
Seller and Buyer hereby agree and acknowledge that the Escrow Agent assumes no liability in connection with the holding of the Earnest Money pursuant hereto except for negligence or willful misconduct of Escrow Agent. Escrow Agent shall not be responsible for the validity, correctness or genuineness of any document or notice referred to under this Agreement. Seller and Buyer hereby agree to indemnify, protect, save and hold harmless Escrow Agent and its successors, assigns and agents pursuant to this Agreement, from any and all liabilities, obligations, losses, damages, claims, actions, suits, costs or expenses (including attorney fees) of whatsoever kind or nature imposed on, incurred by or asserted against Escrow Agent which in any way relate to or arise out of the execution and delivery of this Agreement and any action taken hereunder; provided, however, that Seller and Buyer shall have no such obligation to indemnify, save and hold harmless Escrow Agent for any liability incurred by, imposed upon or established against it as a result of Escrow Agent's negligence or willful misconduct.

**Section 11. Closing:** At or before Closing, Seller shall deliver to Buyer a special warranty deed unless otherwise specified on Exhibit B and other documents customarily executed or delivered by a seller in similar transactions, including without limitation, a bill of sale for any personalty listed on Exhibit A, an owner's affidavit, lien waiver forms (and such other lien related documentation as shall permit the Property to be conveyed free and clear of any claim for mechanics' liens) and a non-foreign status affidavit (pursuant to the Foreign Investment in Real Property Tax Act), and Buyer shall cause to be delivered the funds necessary to pay to Seller the Purchase Price. The Closing shall be conducted by Buyer's attorney or handled in such other manner as the parties hereto may mutually agree in writing. Possession shall be delivered at Closing, unless otherwise agreed herein. The Purchase Price and other funds to be disbursed pursuant to this Agreement shall not be disbursed until the Buyer's attorney's (or other designated settlement agent's) receipt of authorization to disburse all necessary funds.

**Section 12. Notices:** Unless otherwise provided herein, all notices and other communications which may be or are required to be given or made by any party to the other in connection herewith shall be in writing (which shall include electronic mail) and shall be deemed to have been properly given and received (i) on the date delivered in person or (ii) the date deposited in the United States mail, registered or certified, return receipt requested, to the addresses set out in Section 1(g) as to Seller and in Section 1(h) as to Buyer, or at such other addresses as specified by written notice delivered in accordance herewith, (iii) upon the sender's receipt of evidence of complete and successful transmission of electronic mail or facsimile to the electronic mail address or facsimile number, if any, provided in Section 1(g) as to Seller and in Section 1(h) as to Buyer or (iv) on the date deposited with a recognized overnight delivery service, addressed to the addresses set out in Section 1(g) as to Seller and in Section 1(h) as to Buyer, or at such other addresses as specified by written notice delivered in accordance herewith. If a notice is sent by more than one method, it will be deemed received upon the earlier of the dates of receipt pursuant to this Section.

**Section 13. Counterparts; Entire Agreement:** This Agreement may be executed in one or more counterparts, which taken together, shall constitute one and the same original document. Copies of original signature pages of this Agreement may be exchanged via facsimile or e-mail, and any such copies shall constitute originals. This Agreement constitutes the sole and entire agreement among the parties hereto and no modification of this Agreement shall be binding unless in writing and signed by all parties hereto. The invalidity of one or more provisions of this Agreement shall not affect the validity of any other provisions hereof and this Agreement shall be construed and enforced as if such invalid provisions were not included.

**Section 14. Enforceability:** This Agreement shall become a contract when signed by both Buyer and Seller and such signing is communicated to both parties; it being expressly agreed that the notice described in Section 12 is not required for effective communication for the purposes of this Section 14. The parties acknowledge and agree that: (i) the initials lines at the bottom of each page of this Agreement are merely evidence of their having reviewed the terms of each page, and (ii) the complete execution of such initials lines shall not be a condition of the effectiveness of this Agreement. This Agreement shall be binding upon and inure to the benefit of the parties, their heirs, successors and assigns and their personal representatives.

**Section 15. Adverse Information and Compliance with Laws:**

(a) **Seller Knowledge:** Seller has no actual knowledge of (i) condemnation(s) affecting or contemplated with respect to the Property; (ii) actions, suits or proceedings pending or threatened against the Property; (iii) changes contemplated in any applicable laws, ordinances or restrictions affecting the Property; or (iv) governmental special assessments, either pending or confirmed, for sidewalk, paving, water, sewer, or other improvements on or adjoining the Property, and no pending or confirmed owners' association special assessments, except as follows (Insert "None" or the identification of any matters relating to (i) through (iv) above, if any):

______________________________________________________________________________

______________________________________________________________________________

**Note:** For purposes of this Agreement, a "confirmed" special assessment is defined as an assessment that has been approved by a governmental agency or an owners' association for the purpose(s) stated, whether or not it is fully payable at time of closing. A "pending" special assessment is defined as an assessment that is under formal consideration by a governing body. Seller shall pay all owners' association assessments and all governmental assessments confirmed as of the date of Closing, if any, and Buyer shall take title subject to all pending assessments disclosed by Seller herein, if any.
Seller represents that the regular owners' association dues, if any, are $ ________________ per ______________________.

(b) **Compliance:** To Seller's actual knowledge, (i) Seller has complied with all applicable laws, ordinances, regulations, statutes, rules and restrictions pertaining to or affecting the Property; (ii) performance of the Agreement will not result in the breach of, constitute any default under or result in the imposition of any lien or encumbrance upon the Property under any agreement or other instrument to which Seller is a party or by which Seller or the Property is bound; and (iii) there are no legal actions, suits or other legal or administrative proceedings pending or threatened against the Property, and Seller is not aware of any facts which might result in any such action, suit or other proceeding.

**Section 16. Survival of Representations and Warranties:** All representations, warranties, covenants and agreements made by the parties hereto shall survive the Closing and delivery of the deed. Seller shall, at or within six (6) months after the Closing, and without further consideration, execute, acknowledge and deliver to Buyer such other documents and instruments, and take such other action as Buyer may reasonably request or as may be necessary to more effectively transfer to Buyer the Property described herein in accordance with this Agreement.

**Section 17. Applicable Law:** This Agreement shall be construed under the laws of the state in which the Property is located. This form has only been approved for use in North Carolina.

**Section 18. Assignment:** This Agreement is freely assignable unless otherwise expressly provided on Exhibit B.

**Section 19. Tax-Deferred Exchange:** In the event Buyer or Seller desires to effect a tax-deferred exchange in connection with the conveyance of the Property, Buyer and Seller agree to cooperate in effecting such exchange; provided, however, that the exchanging party shall be responsible for all additional costs associated with such exchange, and provided further, that a non-exchanging party shall not assume any additional liability with respect to such tax-deferred exchange. Seller and Buyer shall execute such additional documents, at no cost to the non-exchanging party, as shall be required to give effect to this provision.

**Section 20. Memorandum of Contract:** Upon request by either party, the parties hereto shall execute a memorandum of contract in recordable form setting forth such provisions hereof (other than the Purchase Price and other sums due) as either party may wish to incorporate. Such memorandum of contract shall contain a statement that it automatically terminates and the Property is released from any effect thereby as of a specific date to be stated in the memorandum (which specific date shall be no later than the date of Closing). The cost of recording such memorandum of contract shall be borne by the party requesting execution of same.

**Section 21. Authority:** Each signatory to this Agreement represents and warrants that he or she has full authority to sign this Agreement and such instruments as may be necessary to effectuate any transaction contemplated by this Agreement on behalf of the party for whom he or she signs and that his or her signature binds such party.

DS
Buyer Initials RS ______ ______ Seller Initials ______ ______

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

**Section 22. Brokers:** Except as expressly provided herein, Buyer and Seller agree to indemnify and hold each other harmless from any and all claims of brokers, consultants or real estate agents by, through or under the indemnifying party for fees or commissions arising out of the sale of the Property to Buyer. Buyer and Seller represent and warrant to each other that: (i) except as to the Brokers designated under Section 1(f) of this Agreement, they have not employed nor engaged any brokers, consultants or real estate agents to be involved in this transaction and (ii) that the compensation of the Brokers is established by and shall be governed by separate agreements entered into as amongst the Brokers, the Buyer and/or the Seller.

**Section 23. Attorneys Fees:** If legal proceedings are instituted to enforce any provision of this Agreement, the prevailing party in the proceeding shall be entitled to recover from the non-prevailing party reasonable attorneys fees and court costs incurred in connection with the proceeding.

[X] **EIFS/SYNTHETIC STUCCO:** If the adjacent box is checked, Seller discloses that the Property has been clad previously (either in whole or in part) with an "exterior insulating and finishing system" commonly known as "EIFS" or "synthetic stucco". Seller makes no representations or warranties regarding such system and Buyer is advised to make its own independent determinations with respect to conditions related to or occasioned by the existence of such materials at the Property.

THE NORTH CAROLINA ASSOCIATION OF REALTORS®, INC. AND THE NORTH CAROLINA BAR ASSOCIATION MAKE NO REPRESENTATION AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION OF THIS FORM IN ANY SPECIFIC TRANSACTION. IF YOU DO NOT UNDERSTAND THIS FORM OR FEEL THAT IT DOES NOT PROVIDE FOR YOUR LEGAL NEEDS, YOU SHOULD CONSULT A NORTH CAROLINA REAL ESTATE ATTORNEY BEFORE YOU SIGN IT.

| **BUYER:** | **SELLER:** |
|---|---|
| **Individual** | **Individual** |
| ______________________ | ______________________ |
| Date: ______________________ | Date: ______________________ |
| ______________________ | ______________________ |
| Date: ______________________ | Date: ______________________ |
| **Business Entity** | **Business Entity** |
| RCD LLC, or assigns (Name of Entity) | 315 North Academy LLC (Name of Entity) |
| By: DocuSigned by: Rick Stephenson 3F1F1A7F7AFC487... | By: [signature] |
| Name: Rick Stephenson | Name: RUNA A. COOPER |
| Title: Manager | Title: MANAGER |
| Date: 2/5/2018 | Date: 2/5/2018 |

**The undersigned hereby acknowledges receipt of the Earnest Money set forth herein and agrees to hold said Earnest Money in accordance with the terms hereof.**

NAI Carolantic Realty Trust Account
(Name of Escrow Agent)

Date: ______________________ By: ______________________

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

# EXHIBIT B

- Buyer has the right to extend Closing by an additional fifteen (15) days with the payment of an additional $5000 earnest money. This Additional Earnest Money will be non-refundable but applicable to the Purchase Price

DS
RS

**FIRST AMENDMENT**
**TO**
**AGREEMENT FOR PURCHASE AND SALE OF REAL PROPERTY**

**THIS FIRST AMENDMENT TO AGREEMENT FOR PURCHASE AND SALE OF REAL PROPERTY** ("**Amendment**") is made and entered into as of the 6 day of April 2018 (the "**Effective Date**"), by and between **315 North Academy, LLC**, a North Carolina limited liability company ("**Seller**"), and **RCD, LLC** a North Carolina limited liability company, or assigns ("**Buyer**").

**WHEREAS,** Buyer and Seller are parties to that certain Agreement for Purchase and Sale of Real Property executed effective as of February 5, 2018 (the "Agreement") for the purchase of that certain land and office building known as 315 North Academy Street, Cary, North Carolina 27513 (the "Property"); and

**WHEREAS,** Buyer and Seller desire to (1) reduce the Purchase Price of the Property, and (2) add an additional condition to Closing.

**NOW THEREFORE**, in exchange of the mutual promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Buyer and Seller hereby amend the Agreement as follows:

1. All capitalized terms used in this Amendment that are not otherwise defined herein shall have the meaning ascribed to them in the Agreement.

2. **Section 1(b). Purchase Price**. The "Purchase Price" is hereby amended to be "the sum of $1,875,000." Accordingly, Section 1(b)(v) is hereby amended to be $1,865,000.

3. **Section 6(f)**. Section 6 of the Agreement is hereby amended to add the following as new Section 6(f):

> "It shall be a condition to Closing that all heating and air conditioning systems for the building on the Property are in good working condition to provide normal and customary heating and cooling service for all tenants of the building at the time of Closing."

4. In all other respects, the remainder of the Agreement, and the remainder of any Section of the Agreement partially amended by this Amendment, shall remain in full force and effect. Any portion of the Agreement that is inconsistent with this Amendment shall be deemed amended to be consistent with this Amendment. If any inconsistency exists or arises between the terms of this Amendment and the terms of the Agreement, this Amendment shall prevail. This Amendment may be signed in multiple counterparts and/or by facsimile, each of which shall be deemed an original.

(SIGNATURE PAGE ATTACHED)

**IN WITNESS WHEREOF**, each of the parties hereto has caused their duly authorized representatives to execute and deliver this Amendment on the dates indicated below.

BUYER:

**RCD, LLC**
a North Carolina limited liability company

By: ______________________ Manager
Richard C. Stephenson, Manager

Date: 4/5/18

SELLER:

**315 North Academy, LLC**
a North Carolina limited liability company

DocuSigned by:
By: RUNA A COOPER SR
Runa A. Cooper, Manager

Date: 4/6/2018

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

**In the Matter of:**
**315 NORTH ACADEMY, LLC**
**Debtor**

**Chapter 11**
**Case No.: 18-03138-5-DMW**

**NOTICE OF MOTION TO SELL PROPERTY FREE AND CLEAR OF LIENS AND OTHER INTERESTS WITH LIENS TO ATTACH TO PROCEEDS PURSUANT TO 11 U.S.C. § 363(f)**

NOTICE IS HEREBY GIVEN of the Motion to Sell Property Free and Clear of Liens and Other Interests with Liens to Attach to Proceeds Pursuant To 11 U.S.C. § 363(f) (the “Motion”) filed by the Debtor simultaneously herewith in the above-captioned case; and

FURTHER NOTICE IS HEREBY GIVEN that the Motion may be allowed provided no response and request for a hearing is made by a party in interest in writing to the Clerk of this Court on or before July 16, 2018; and

FURTHER NOTICE IS HEREBY GIVEN that a hearing will be conducted on the Motion and any response thereto on July 18, 2018 at 11:00 a.m. at the United States Bankruptcy Court & Post Office Building, located at 300 Fayetteville Street, Raleigh, North Carolina, only if objections are filed. If no request for a hearing is timely filed, the Court may rule on the Motion and response thereto ex parte without further notice. Any party filing an objection requesting a hearing, shall appear at said hearing or they may be taxed with Court costs.

This the 22nd day of June, 2018.

s/George Mason Oliver
GEORGE MASON OLIVER
N.C. State Bar No. 26587
THE LAW OFFICES OF
OLIVER & CHEEK, PLLC
Post Office Box 1548
New Bern, NC 28563
Telephone: (252) 633-1930
Facsimile: (252) 633-1950
Email: george@olivercheek.com
*Attorney for the Debtor*

**CERTIFICATE OF SERVICE**

I, George Mason Oliver, Post Office Box 1548, New Bern, N.C. 28563 certify;

That I am, and at all times hereinafter mentioned was, more than eighteen (18) years of age; and

That on the 22nd day of June, 2018, I served copies of the foregoing pleading on the parties listed below electronically as indicated or by first class mail bearing sufficient postage with a Notice only going to the parties listed on Exhibit A attached hereto by first class mail bearing sufficient postage and,

I certify under penalty of perjury that the foregoing is true and correct.

This the 22nd day of June, 2018.

s/George Mason Oliver
GEORGE MASON OLIVER
N.C. State Bar No. 26587
THE LAW OFFICES OF
OLIVER & CHEEK, PLLC
Post Office Box 1548
New Bern, NC 28563
Telephone: (252) 633-1930
Facsimile: (252) 633-1950
Email: george@olivercheek.com
*Attorney for the Debtor*

cc:
Bankruptcy Administrator (via CM/ECF)

315 North Academy, LLC
Attn: Runa A. Cooper, Sr.
PO Box 640
Morrisville, NC 27560

F&M Bank
Attn: Officer, Mg Agt or Agent
221 N. Main Street
Salisbury NC 28144

Wake County Tax Department
Attn: Manager or Agent
PO Box 2331
Raleigh, NC 27602

Martin S. Cooper
904 Palmetto Drive
Cary, NC 27511

R. Daniel Gibson
Cary Law
PO Box 3525
Cary, NC 27519